## Branch v. Berger.    No. 2.

*Public officers — Compensation — Clerk of Quarter Sessions—Resignation and reappointment—Act of June 29, 1923.*

Where the Clerk of the Court of Oyer and Terminer and Quarter Sessions in a county of the sixth class assumed office in January, 1922, resigned after the passage of the Act of June 29, 1923, P. L. 944, and was immediately reappointed by the Governor to fill the vacancy caused by his resignation, he is not entitled to the salary given by the act, inasmuch as it expressly provides that "a county officer in office at the date of the approval of this act . . . shall continue to collect and receive the fees . . . now provided by law."

Demurrer to bill in equity. C. P. Carbon Co., June T., 1924, No. 1.

See Branch v. Berger, 6 D. & C. 320.

*William G. Thomas*, for plaintiff.

*James M. Breslin, J. C. Loose* and *James Smitham*, for defendant.

RENO, P. J., 31st judicial district, specially presiding, Dec. 21, 1925.— Kuehner was elected Clerk of the Court of Quarter Sessions in November, 1921, and assumed office in January, 1922. The office was then upon a fee basis. After the approval of the Act of June 29, 1923, P. L. 944, which fixes a salary for that office, Kuehner resigned and Governor Pinchot immediately appointed him to fill the vacancy created by the resignation. Kuehner claimed the salary provided by the Act of June 29, 1923.

Complainant, a taxpayer, challenged his right by his bill in equity. By an opinion filed July 17, 1924, a demurrer to complainant's bill was sustained and a decree *nisi* dismissing the bill was entered. Thereafter, complainant

amended his bill. To the amended bill a new demurrer has been filed. The case is before us upon this demurrer.

It will be remembered that the bill originally charged that Kuehner and the Governor had entered into a conspiracy to defeat that provision of the Constitution (article III, section 13) which forbids the increase of the emoluments of an officer after his election or appointment, and that, as a consequence, Kuehner's appointment was fraudulent and void. This, we held, required an investigation into the motives of the Governor in exercising his executive functions, and this being a non-justiciable question, we declined jurisdiction: 6 D. & C. 320. To this ruling we adhere.

The bill also charged, and the amendments renew the charge, that Kuehner's claim to the salary, independently of the averment of a conspiracy, involved a violation of the same provision of the Constitution. We suggested, in the same opinion, that the constitutional provision did not apply to this case. The Constitution forbids an increase of emoluments of public officers after their election or appointment, but does not forbid an increase of emoluments during the term for which they are elected or appointed. The effect of this distinction is that, since Kuehner now holds the office by an appointment made subsequent to the approval of the Act of June 29, 1923, the Constitution does not prohibit his taking the salary. The case would be different if the Constitution prohibited an increase during the term for which an officer was elected. In that case, Kuehner could not claim any increase made effective by legislation enacted during the period of four years after January, 1921. However, what we said in the opinion of July 17, 1924, was a mere suggestion, *obiter dicta*, and we are repeating it as such. The ultimate decision of the case cannot rest upon that ground.

The effect of the amendments was to introduce a new ground of relief into the suit; a contention founded upon a provision of the act. The Act of June 29, 1923, § 10, P. L. 944, provides: "This act shall take effect on the first Monday of January, 1924, and shall not be construed to apply to any county officer in office on the date of the approval of this act, and any such officer shall continue to collect and receive the fees and salary now provided by law."

Kuehner is a county officer. He was in office on the date of the approval of the act. Hence, he "shall continue to collect and receive the fees and salary now provided by law;" that is, the fees effective prior to the passage of the act. This seems very plain, and the arguments whereby Kuehner seeks to avoid this plain mandate of the law are unconvincing. That he resigned after the passage of the act is without force, since he was admittedly a county officer in office on the date of the approval of the act, and, therefore, within its purview. It goes for nothing to determine whether the words "county officers" refer to the office or to the individual holding it; however construed, the words are effective to prevent officer and individual alike from enjoying the salary therein provided. Nor does it avail him anything to inquire what would have happened if the Governor had appointed another to fill the vacancy caused by his resignation; we may readily concede that the other would have enjoyed the salary without also conceding that Kuehner, who was a county officer in office at the date of the approval of the act, is likewise entitled to it. And, finally, although there is some force in the contention that the language of section 10 is sufficiently broad to preclude Kuehner from receiving the salary even in the event of a re-election, the correct conclusion to be drawn is that the "county officer in office at the date of the approval of this act . . . shall continue to collect and receive the fees . . . now provided by law" only

for and during the terms of office which he was enjoying at the time of the approval of the act.

It will be observed that there is a decided difference between the provision of the Constitution and that of the act. The Constitution prohibits the increase or decrease of emoluments of officers after their election or appointment. The act provides that officers in office on the date of approval shall be exempt from its operation. In the difference between these two provisions will be found the legislative intent. The legislature, realizing, doubtless, that the provision of the Constitution might be evaded by a resignation and a subsequent reappointment, enacted language which made such evasion impossible. But, whatever may have been the legislative intent, it is clear that the provision applies to Kuehner and prevents him from enjoying the benefits of the statute. Plaintiff's amended bill having thus been shown to contain a statement of a case cognizable in equity, the demurrer must be overruled.

Now, Dec. 21, 1925, the demurrer is overruled and dismissed and defendant shall, within fifteen days from this date, file an answer under penalty of having the bill taken *pro confesso*.     From Jacob C. Loose, Mauch Chunk, Pa.